Richard A. DuBose
Virginia Bar No.: 91705
Gebhardt and Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
Tel: (410) 385 – 5039
E-Mail: rdubo@gebsmith.com
*Counsel to Business Finance Group*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| IN RE: | * | |
| GMS SUNSET, LLC | * | Case No. 25-11181-BFK |
| Debtor. | * | Chapter 11 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MOTION OF BUSINESS FINANCE GROUP FOR ENTRY OF AN ORDER
<u>CONVERTING OR DISMISSING CHAPTER 11 CASE</u>**

Business Finance Group ("**Movant**"), pursuant to 11 U.S.C. § 1112(b) and *Fed. R. Bankr. P.* 9014 and 1017, hereby moves for entry of an order converting or dismissing the above-captioned Chapter 11 bankruptcy case filed by Debtor, GMS Sunset, LLC ("**Debtor**"). In support of this Motion, the Movant state as follows:

**I.
<u>Introduction</u>**

This case was filed in bad faith and must be dismissed or converted. The Movant is the largest secured creditor of the Debtor and its loan is secured by a lien against certain real property owned by the Debtor generally known as 276 and 294 Sunset Park Drive, Herndon, Virginia ("**Property**"). The Debtor is a single asset real estate entity and the Property is the Debtor's only asset.

The Movant has attempted to exercise its rights and remedies under its loan documents for the past five years by attempting four (4) separate foreclosures and navigating two (2) bankruptcy

filings of the Debtor. As explained in more detail below, the Debtor has abused the bankruptcy process and state court foreclosure process at every turn in order to avoid paying its debts.

The Debtor has also failed to pay real estate taxes assessed against the Property for the years 2023, 2024 and 2025 and failed to pay condominium association dues assessed against the Property resulting in various condominium liens against the Property.

Pursuant to Section 1112 of the Bankruptcy Code, the Court shall convert or dismiss a case upon a showing of "cause," absent a finding of unusual circumstances. In this case and as explained more detail below, there are numerous circumstances that warrant a finding of "cause," including, but not limited to: (a) the Debtor has only one significant asset which is the subject of multiple foreclosures, (b) the Debtor has few, if any, unsecured creditors, whose claims are small compared to those of secured creditors, (c) the bankruptcy filing is essentially a two-party dispute between the Debtor and the Movant; (d) the timing of the multiple bankruptcy filings suggests an intent to delay or frustrate the legitimate efforts of the Movant to enforce it rights; and (d) the Debor has no employees, no cash, or realistic ability reorganize.

In addition, while somewhat unusual, the Movant supports a conversion of this case to a Chapter 7 case to allow a Chapter 7 trustee to liquidate the Property and prevent the Debtor from further attempts to circumvent both the state foreclosure process and the bankruptcy process.[1] In lieu of a conversion, the Movant requests that this Court dismiss this case with prejudice for 180 days.

---

[1] The Movant also joins in the Motion to Dismiss or Convert filed by the U.S. Trustee at ECF No: 23.

## II.
## Factual and Procedural Background

**A.     The Loan.**

On or about October 13, 2004, the Movant extended a $469,000.00 Commercial Loan to the Debtor ("Loan"). The Loan is evidenced by, among other things, a U.S. Small Business Administration Note, dated October 13, 2004, executed by the Debtor to the order of Movant ("Note"). A true and accurate copy of the Note is attached hereto as Exhibit A and incorporated herein by reference.

The Note is secured by, among other things, the Property owned by the Debtor pursuant to and as more particularly described in a Deed of Trust, dated September 8, 2004, executed by the Debtor for the benefit of the Movant and recorded among the Land Records of Fairfax County, Virginia ("Land Records") at Liber 16490, Folio 1808 as assigned to the U.S. Small Business Administration ("SBA") by an Assignment of Deed of Trust, dated September 8, 2004, and recorded among the Land Records at Liber 16490, folio 1817, and as assigned back to the Movant by an Assignment of Documents, dated October 17, 2019, and recorded among the Land Records at Liber 25962, folio 0100 (collectively, the "Deed of Trust"). The Deed of Trust is attached hereto as Exhibit B and incorporated herein by reference.

The Note is also secured by certain rents, leases and other profits arising out of the Property pursuant to an Assignment of Leases and Rents, dated September 8, 2004, executed by the Debtor in favor of the Movant and recorded among the Land Records at Liber 16940, Page 1820 ("Assignment of Rents"), as assigned to the SBA and then assigned back to the Movant pursuant to the Assignment of Documents, dated October 17, 2019, and recorded among the Land Records at Liber 25962, folio 0100 (collectively, the "Assignment of Rents"). A true and accurate copy of the Assignment of Rents is attached hereto as Exhibit "C" and incorporated herein by reference.

3

The Note, the Deed of Trust and the Assignment of Rents and all other documents securing, guarantying or otherwise documenting the Note are collectively referred to herein as the "Loan Documents."

The Debtor is a single asset real estate entity and owns no other assets other than the Property.

As of the Petition Date, the amounts owed by the Debtor under the Loan Documents totaled $146,631.11, plus attorneys' fees and costs on the amount of $84,519.98. Interest continues to accrue on the unpaid principal balance and the Movant continues to incur additional legal fees and costs.

**B. The Foreclosures and Bankruptcies**

 **a. First Foreclosure**

The Debtor defaulted on its obligations under the Loan Documents in 2019. As a result of those defaults, the Movant scheduled a foreclosure sale of the Property for January 17, 2020 ("First Foreclosure"). The First Foreclosure was cancelled when the Debtor delivered a lump sum payment to the Movant on the eve of the First Foreclosure and signed a forbearance agreement.

 **b. Second Foreclosure and First Bankruptcy**

The Debtor defaulted under the terms and conditions of the forbearance agreement by failing to deliver certain payments called for in the forbearance agreement. As a result, the Movant scheduled a second foreclosure sale for August 18, 2023 ("Second Foreclosure"). On August 17, 2023, on the eve of the Second Foreclosure, the Debtor filed its first bankruptcy case in this court, Case Number: 1:23-bk-11315 ("First Bankruptcy").

The First Bankruptcy dragged on for over a year while the Debtor allegedly sought to refinance the Movant's debt. As stated above and as reflected in the Debtor's schedules in the

First Bankruptcy, there was (and is) substantial equity in the Property that should have facilitated a simple refinance. Nevertheless, the Debtor was unable to consummate its proposed plan to refinance the Movant's debt. As a result, the Debtor consented to the dismissal of the First Bankruptcy with a ninety (90) prohibition on re-filing. The order dismissing the First Bankruptcy with prejudice was entered on November 21, 2024.

  **c. Third Foreclosure**

On January 30, 2025, the Movant attempted a third foreclosure sale of the Property during the ninety (90) day prohibition on re-filing ("Third Foreclosure"). Because the Debtor could not file a bankruptcy to stop the Third Foreclosure, Steve Bilidas, the representative of the Debtor in this case, appeared at the Third Foreclosure. Mr. Bilidas proceeded to outbid all bidders and the bid purchase price up to $1,523,000.00. Mr. Bilidas signed the purchase contract which required him to increase the initial deposit within seven (7) calendar days of the sale and to close on the sale within thirty (30) days of the sale date. A copy of the purchase contract is attached hereto as Exhibit D and incorporated herein by reference.

Mr. Bilidas failed to increase the initial deposit within seven (7) calendar days of the sale. On February 13, 2025, counsel for the Movant delivered a letter to Mr. Bilidas and demanded that he comply with the terms of the purchase contract and increase the deposit. Mr. Bilidas never delivered the increased deposit. A copy the February 13, 2025 letter to Mr. Bilidas is attached hereto as Exhibit E and incorporated herein by reference.

On March 27, 2025, the substitute trustee, Mark Hayes, delivered a letter to Mr. Bilidas and informed him he must deliver the purchase price and any other closing costs by April 1, 2025, or the substitute trustee would forfeit the initial deposit and the Movant would take steps to re-sale

5

the Property. A copy of the March 27, 2025 letter is attached hereto as Exhibit F and incorporated herein by reference.

Mr. Bilidas ignored all attempts by the Movant's counsel and the substitute trustee to reach him and finalize the purchase of the Property. As a result, the initial deposit was forfeited and applied to the outstanding balance of the Loan.

It is now obvious that Mr. Bilidas never intended to close on the foreclosure purchase and his participation in the Third Foreclosure was simply an end around of this Court's prior order prohibiting the Debtor from refiling within 90 days of the First Bankruptcy.

### d. Fourth Foreclosure and Second Bankruptcy

As a result of the Mr. Bilidas' failure to close on the purchase contract for the Third Foreclosure, the Movant scheduled a fourth foreclosure of the property ("Fourth Foreclosure"). At the Fourth Foreclosure, bidding commenced but the sale was ultimately cancelled ***in the middle of bidding*** because the Debtor filed this bankruptcy case ("Second Bankruptcy"). At the Debtor's 341 hearing, Mr. Bilidas indicated that the plan in this Second Bankruptcy would be to seek refinancing of the Movant's debt which is the exact same plan the Debtor failed to consummate in the First Bankruptcy less than a year ago.

### C. Real Estate Taxes and Condominium Liens

In addition to the foregoing, the Debtor habitually fails to pay the real estate taxes assessed against the Property or the condominium dues assessed against the Property. The failure to pay the condominium dues assessed against the Property has resulted in several liens filed against the property for past due condominium fees.

At present, the Debtor has also failed to pay real estate taxes against the Property for 2023, 2024 and 2025 in the following amounts:

**2023:**

276 Sunset Park Drive: $9,991.55

294 Sunset Park Drive: 12,170.86

**2024**

276 Sunset Park Drive: $10,010.10

294 Sunset Park Drive: $12,154.94

**2025**

276 Sunset Park Drive: $9,399.27

294 Sunset Park Drive: $11,413.26

*See* records of the Fairfax County Tax Department attached hereto as Exhibit G.

### III.
### Law and Argument

**A.    This case must be dismissed under Section 1112 of the Bankruptcy Code.**

    **1.    Section 1112 of the Bankruptcy Code sets forth the relevant framework for dismissal or conversion of a case filed under Chapter 11.**

Section 1112 of the Bankruptcy Code sets forth the framework for dismissal or conversion of a case under Chapter 11. Pursuant to Section 1112(b), the Court "shall" convert or dismiss a case under Chapter 11 upon a showing of "cause." The movant bears the initial burden of establishing "cause." 11 U.S.C. § 1112(b)(1). Once a movant establishes "cause," the burden shifts to the Debtor to:

> Identif[y] unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –
>    (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>    (B) the grounds for converting or dismissing the case include an act or

7

> omission of the debtor other than under paragraph (4)(A) –
>> (i) for which there exists a reasonable justification for the act or omission; and
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. §1112(b)(2); *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 713 (Bankr. D. Md. 2011). If the debtor cannot meet this burden, the Court must either convert or dismiss the case, whichever is in the best interest of creditors and the estate, unless the Court determines that appointment of a Chapter 11 trustee is appropriate. 11 U.S.C. §1112(b)(2).

    **2.    A "bad faith" filing constitutes the requisite "cause" to dismiss a case under Section 1112.**

While Section 1112(b) sets forth specific examples of "cause," the list is not exhaustive. It is well-settled that a filing made in bad faith constitutes the requisite "cause" for dismissal. *See, e.g., In re Skeen, Goldman LLP*, 2007 WL 4556684 (Bankr. D. Md. 2007); *see also In re Americert*, 360 B.R. 398, 401 (Bankr.D.N.H. Jan.31, 2007). To prove a bad faith filing, the movant must demonstrate both subjective bad faith and objective futility with the filing. See *Carolin Corp. v. Miller*, 886 F.2d 693, 700–01 (4th Cir.1989). In this case, the Second Bankruptcy filed by the Debtor meets both requirements.

    **a. Objective Futility**

The Debtor filed the First Bankruptcy Case on August 17, 2023. The Debtor did not file a proposed plan in that case until May 15, 2024 ("First Plan"). In the First Plan, the Debtor proposed to refinance the Movant's debt on or before September 15, 2024. For unknown reasons, the Debtor was unable to refinance the Movant's debt on or before September 15, 2024 and filed an Amended Plan that proposed to refinance the Movant's debt on or before December 15, 2024 ("Second Plan"). A copy of the First Plan and Second Plan are attached hereto as Exhibit H and incorporated herein by reference.

8

The Debtor failed to refinance the Movant's debt prior to that date. After that failure and several other failures in the First Bankruptcy, the U.S. Trustee filed an objection to the Second Plan. The Debtor eventually consented to the dismissal of the First Bankruptcy with a 90-day prohibition on refiling. The order dismissing the First Bankruptcy with prejudice was entered on November 21, 2024.

In the First Bankruptcy, the Debtor scheduled the value of the Property as $1,200,000. The Movant filed a proof of claim in the First Bankruptcy case indicating that $302,286.56 was due and owing from the Debtor on the Petition Date of the First Bankruptcy. The failure by the Debtor to refinance the Movant's debt during the 15 months that the First Bankruptcy was pending, despite the substantial equity cushion, clearly illustrates that the Debtor never intended to refinance the Movant's debt and, instead, was simply delaying the Movant's enforcement of its rights and remedies for as long as possible.

Turning to this Second Bankruptcy, the Debtor indicated in its 341 hearing that the proposed plan in this case would be to refinance the Movant's debt. In the Debtor's schedules and statement of financial affairs, the Debtor indicates it has no cash on hand, has no income for 2025 and has rental payments due from its tenant (which is owned by the same principals as the Debtor) that are over 90 days past due.

The foregoing clearly illustrates the objective futility of this Second Bankruptcy and that there is no realistic prospect of an effective reorganization either in progress or on the horizon. As the First Bankruptcy illustrates, the Debtor will not make any legitimate efforts to refinance and the Debtor has no income. *See In Re Sydnor*, 431 B.R. 584, 593 (Bankr. D. MD 2010) (holding that objectively futility is shown when no realistic reorganization is in "progress or in prospect").

**b. Subjective Bad Faith.**

Evidence of subjective bad faith of the kind warranting dismissal of Chapter 11 case, may include the following: (1) that debtor has only one asset; (2) that debtor has few unsecured creditors whose claims are small in relation to those of secured creditors; (3) that debtor's one asset is the subject of foreclosure action as result of arrearages or default on debt; (4) that debtor's financial condition is, in essence, two-party dispute between debtor and secured creditors, which can be resolved in pending state foreclosure action; (5) that timing of debtor's petition evidences an intent to delay or frustrate legitimate efforts of debtor's secured creditors to enforce their rights; (6) that debtor has little or no cash flow; (7) that debtor cannot meet current expenses, including payment of personal property and real estate and (8) that debtor has no employees. *See General Growth Properties, Inc.*, 409 B.R. 43 (Bankr. S.D.N.Y. 2009) (quoting *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2nd Cir. 1997). As quoted with acceptance by several Fourth Circuit courts in *In Re Sydnor, supra*, and *In re Auto Money North, LLC*, 650 B.R. 245 (2023) (Bankr. D.S.C. 2023).

This case meets all of the criteria for a subjective bad faith filing. Specifically:

*(1) The Debtor has Only Asset*

The Debtor's only asset in this case is the Property. It has no cash on hand and is not collecting any rental payments from its tenant.

*(2) The Debtor has Few Unsecured Creditors*

The Debtor does not list any unsecured creditors in its schedules

*(3) The Debtor's Only Asset is Subject to a Foreclosure Action as Result of Arrearages or Default on Debt.*

As stated above, the Property was the subject of four (4) separate foreclosure actions as a

result of the default under the Loan Documents and the substantial arrearages.

*(4) The Debtor's Financial Condition is, in Essence, a Two-Party Dispute Between Debtor and Secured Creditor, Which Can Be Resolved in Pending State Foreclosure Action*

As stated by the U.S. Trustee in its motion, this Second Bankruptcy is effectively a two party dispute. The Debtor has no unsecured creditors and the Movant's debt will be easily satisfied in a foreclosure sale or a sale of the Property by a trustee. Indeed, a foreclosure sale of the Property would undoubtedly result in surplus proceeds flowing the Debtor.

*(5) The Timing of Debtor's Petition Evidences an Intent to Delay or Frustrate Legitimate Efforts of Debtor's Secured Creditors to Enforce Their Rights*

The Debtor filed the First Bankruptcy case on the eve of the Second Foreclosure. At the Third Foreclosure, Mr. Bilidas, the representative of the Debtor in this Second Bankruptcy, appeared at the Third Foreclosure and purposely outbid all other bidders so that the Property would not be sold to a third party. After executing the contract of sale at the Third Foreclosure, Mr. Bilidas never contacted the Movant's counsel or the substitute trustee to increase the deposit or close on the sale. Mr. Bilidas' actions can only be viewed as a blatant attempt to circumvent this Court's order dismissing the First Bankruptcy with prejudice and an obvious attempt to frustrate the legitimate efforts of the Movant to enforce its rights in the state foreclosure process.

The Debtor then filed this Second Bankruptcy case halfway through the bidding process at the Fourth Foreclosure. The foregoing actions by the Debtor illustrate a clear intent to frustrate the Movant's efforts to exercise its rights and remedies.

*(6) The Debtor has Little or No Cash Flow*

The Debtor's schedules reflect that it has received no income in 2025 and has no cash on hand.

*(7) The Debtor Cannot Meet Current Expenses, including Payment of Real Estate Taxes*

As stated above, the Debtor has failed to pay the real estate taxes assessed against the Property for the years 2023, 2024 and 2025 and has no prospect of doing so. The Debtor has received no income for 2025 and has no way of paying the real estate taxes. The Debtor has also failed to pay condominium dues assessed against the Property cannot possibly do so when it has received no income in 2025.

*(8) That Debtor Has No Employees*

The Debtor is a single asset real estate entity and has no employees.

For the foregoing reasons, this case is a textbook case for subjective bad faith and should be converted or dismissed.

## IV
## Conclusion

The Debtor has abused the state court foreclosure process and the federal bankruptcy process at every turn. The facts of this case present a textbook case of a "bad faith" filing. As a result, this case should be dismissed or converted.

The Movant is not opposed to a conversion to a Chapter 7 case as a Chapter 7 trustee would prevent further abuse of the state court foreclosure process and further abuse of the federal bankruptcy process. The Movant is concerned that dismissal may lead to further abuse of the state court foreclosure process and/or the bankruptcy process as the principal of the Debtor has already shown a willingness to engage in such abuse.

If this Court is inclined to dismiss the case, the Movant requests that this Court dismiss the case with prejudice for 180 days under 11 U.S.C. § 105(a) and include in the order an injunction

prohibiting principals of the Debtor or any other affiliate of the Debtor from participating in any foreclosure sale during that 180-day period.

Dated September 22, 2025

                                                Respectfully submitted,

                                                */s/Richard A. DuBose*
                                                Virginia Bar No.: 91705
                                                Gebhardt and Smith, LLP
                                                One South Street, Suite 2200
                                                Baltimore, Maryland 21202
                                                Tel: (410) 385 – 5039
                                                E-Mail: rdubo@gebsmith.com
                                                *Counsel to Business Finance Group*

**Certificate of Service**

      I hereby certify that on September 22, 2025, I electronically filed the foregoing motion with the Clerk of the Court and transmitted a true and correct copy of said document electronically through the electronic case filing system or by first class United States mail, postage prepaid to the following:

GMS Sunset LLC 1141 Elden Street, Suite 224 Herndon, VA 20170
Matthew W. Cheney ustpregion04.ax.ecf@usdoj.gov
Richard Ashford DuBose, III rdubo@gebsmith.com, dfont@gebsmith.com
Jack Frankel jack.i.frankel@usdoj.gov,
USTPRegion04.ax.ecf@usdoj.gov;Robert.W.Ours@usdoj.gov
Robert P. McIntosh Robert.McIntosh@usdoj.gov,
USAVAE.RIC.ECF.CIVIL@usdoj.gov;Ramona.ONeil@usdoj.gov;CaseView.ECF@usdoj.gov
Daniel M. Press dpress@chung-press.com, pressdm@gmail.com;danpress@recap.email

                                                 */s/ Richard A. DuBose*
                                                 Richard A. DuBose