**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| In re: | **Case No. 25-11181-BFK** |
| **GMS Sunset LLC**<br>**Debtor.** | **Chapter 7** |

**TRUSTEE'S APPLICATION FOR EMPLOYMENT**
**OF REAL ESTATE AGENT AND LISTING BROKER**

Lauren Friend McKelvey, Trustee, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of GMS Sunset LLC (the "**Debtor**"), in the above- referenced Chapter 7 case hereby submits this motion to the Court for entry of an Order authorizing the employment of Stephen Karbelk and RealMarkets (supported by Stephanie Young and Robert Walters) (collectively, "**Agent**") as Trustee's real estate agent, and Agent's affiliated listing broker, CENTURY 21 Commercial New Millennium ("**Listing Broker**"), as the sales agent for the Chapter 7 estate to sell real property of the Debtor upon the following grounds:

1.      On June 11, 2025, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] On October 15, 2025, the Debtor voluntarily converted their case to one under chapter 7.

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email:    LMcKelvey@reitlerlaw.com
              DTabakin@reitlerlaw.com

*Proposed Counsel for the Chapter 7 Trustee*

2.      The Trustee was thereafter appointed and remains the duly qualified and acting Trustee in this case.

3.      The Debtor owns real property located at 294 Sunset Park Drive, Suite 11, Herndon, VA 20170 (the "**Property**").

4.      Subject to Court approval, the Trustee has agreed to pay a commission to her Agent and Broker of five and one-half (5.5%) percent of the gross sale proceeds. The listing agreement is attached as <u>Exhibit A</u>. A commission will be offered to cooperating brokers, as provided for in the listing agreement.

5.      In order to facilitate the sale of the Property, the Trustee asks that the Court authorize Agent and its employees to request and obtain verbal and written payoff statements, homeowner and condominium association payoffs, payment histories, and related information and documents from any secured creditor in this case, and to provide such documents as may be reasonably requested in connection with any sale. Additionally, the Trustee requests that Agent and its employees be expressly authorized to communicate with any secured creditors for the purpose of negotiating and finalizing the terms and conditions under which the Property might be sold free and clear of their existing liens.

6.      The Trustee also asks the Court to approve the following employment conditions: Agent is authorized, if necessary, to put all utility accounts, including the electric, gas, water, and sewer accounts, into the name of Stephen Karbelk, Stephanie Young, or RealMarkets, as Agent for the Trustee. The Agent shall not be responsible for paying past due amounts that were incurred prior to the petition date of the bankruptcy filing. Subject to a further order and approval of the Court, the Agent shall be reimbursed for all utility expenses, title search expenses, property

2

maintenance and repair expenses, and property owners association resale package expenses, if applicable, upon the sale of the Property.

7.      In addition, to the extent that the Trustee pursues an alternative disposition of the Property, including a sale of the available equity to the Debtor, the Trustee seeks authority to employ the Agent at the hourly rate of $275 to advise the Trustee concerning the value of the Property. In the event she deems it advisable, the Trustee will seek the Court's approval for payment of compensation to the Broker for the value of the Agent's time in assisting the Trustee.

8.      The Agent and the Listing Broker's connections with the Debtor, its creditors, other parties in interest, the Trustee, the United States Trustee, and anyone employed by the United States Trustee are stated in the Declaration attached hereto as Exhibit B.

9.      Based on the attached Declaration, the Trustee believes that the Agent and Listing Broker do not represent any interest adverse to the Estate and are disinterested persons within the meaning of § 101(14) of the Bankruptcy Code.

10.     Attached hereto as Exhibit C is a proposed order authorizing the employment of the Agent and Listing Broker on the terms set forth herein.

11.     The Trustee seeks to employ the Agent and Listing Broker pursuant to § 327 of the Bankruptcy Code.

12.     WHEREFORE, the Trustee respectfully requests that this Court enter an order: (i) authorizing the Trustee's employment of Stephen Karbelk and RealMarkets (supported by Stephanie Young and Robert Walters) as Trustee's real estate agent, and Agent's affiliated listing broker, CENTURY 21 Commercial New Millennium, on the terms and conditions outlined

in this Application; and (ii) granting such other and further relief as the Court deems just and proper.

**LAUREN FRIEND MCKELVEY, TRUSTEE**

Dated:  October 24, 2025            Respectfully submitted,

*/s/ David N. Tabakin*
Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email: LMcKelvey@reitlerlaw.com
           DTabakin@reitlerlaw.com

*Proposed Counsel for the Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of October, 2025, a true and accurate copy of the foregoing Application was sent via email to the Office of the U.S. Trustee at ustpregion04.ax.ecf@usdoj.gov and via Notice of Electronic Filing to Counsel to Debtor and all registered users in this case pursuant to this Court's CM/ECF policy.

*/s/ David N. Tabakin*
David N. Tabakin

# Exhibit A



## CENTURY 21
## COMMERCIAL®
### New Millennium

---

**EXCLUSIVE RIGHT TO SELL COMMERCIAL REAL ESTATE LISTING
AGREEMENT (IMPROVED OR UNIMPROVED)
(ALL JURISDICTIONS)**

---

1.  **PARTIES**. This Exclusive Right to Sell Commercial Real Estate Listing Agreement is made on <u>October 23, 2025</u> ("Date") by and between the parties to this agreement (the "Listing") based upon their mutually exchanged promises, and other good and valuable consideration the value of which is hereby acknowledged:

    **CLIENT**
    | | |
    |---|---|
    | Individual Name(s): | Lauren Friend McKelvey, Trustee |
    | Client Entity Name: | |
    | Street Address: | 11921 Freedom Drive, Suite 550 |
    | Unit: | |
    | City, State, Zip: | Reston, Virginia 20190 |
    | Phone: | 571-235-1050      Email: vatrustee@reitlerlaw.com |

    **BROKER**
    | | |
    |---|---|
    | Name: | CENTURY 21 Commercial New Millennium |
    | Street Address: | 6631 Old Dominion Drive |
    | Unit: | |
    | City, State, Zip: | McLean, VA 22101 |
    | Phone: | 703-556-4222      Email:wendy.dean@c21nm.com |

2.  **PROPERTY.** "Property" means the following real and/or personal Property Street Address(es):

    **294 Sunset Park Drive, Herndon, Virginia 20170**
        **Suite 11**      *LFM*    *WD*

    Except as otherwise provided in this Listing, Broker is to market the Property together with:
    - All buildings, improvements and fixtures;
    - All rights, privileges, and appurtenances pertaining to the Property, including Client's right, title and interest in any minerals, utilities, adjacent streets, alleys, strips, easements and rights-of-way;
    - Client's interest in all leases, rents, and security deposits for all or any part of the Property;
    - Client's interest in all licenses and permits related to the Property, only as permitted by State law;
    - Client's interest in all third-party warranties or guaranties, if transferable, relating to the Property or any fixtures;
    - Client's interest in any trade names, if transferable, used in connection with the Property.
    - All Client's tangible personal property located on the Property that is used in connection with the Property's operations except: Any personal property that belongs to a tenant.

---

Client: *LFM* / _____    Broker: *WD*

**3.**    **LISTING PRICE – SALE.** Client instructs Broker to market the Property at the following price:

| | | | | |
|---|---|---|---|---|
| 294 Sunset Park Drive Suite 11 | Herndon | VA | 20170 | Subject to Offers |

*LJM*   *WD*

A.   Client agrees to sell the Property for the Listing Price or any other price acceptable to Client. The Client shall pay to the Broker all compensations and fees, described herein, as a condition of closing. The payment of any closing costs shall be negotiated in the sales contract or lease agreement.

B.   This Listing begins <u>within 7 days of Bankruptcy Court approval of this Agreement</u> and ends at 11:59 p.m. on 2/28/26 (the "Expiration Date"). Client or Broker may terminate this Listing on notice to Client or Broker at any time after 30 days' notice from either party. The Listing shall automatically extend and renew on a month-to-month basis ("Automatic Extension Period") beginning on the first day following the Expiration Date. Either party may terminate this Listing Agreement by giving not less than thirty (30) days written notice of termination prior to the Listing's expiration or to any extension period agreed to by the Parties, including the Automatic Extension Period. If the Client elects to terminate this Agreement before the Expiration Date, the Client shall pay the Broker $N/A within five (5) business days as an early termination fee.

**4.**    **LISTING BROKER COMPENSATION.**
*Listing Broker Compensation and Buyer's Broker Compensation are fully negotiable and are not fixed, controlled, recommended, or suggested by law or any multiple listing service or association of REALTORS®.*

**Listing Broker Compensation.** When earned and payable, and as a condition of closing, the Client ("Seller") will pay the Broker a Compensation of:

⊠ 3.0 % of gross sales price, subject to Bankruptcy Court approval

("Broker Compensation") if, during the term of Agreement, anyone produces a buyer ready, willing, and able to buy Property.

Broker Compensation is also earned if, within _____30____ days after the expiration or termination of Agreement, a contract is ratified with a ready, willing, and able buyer to whom Property had been shown during the term of Agreement; provided, however, that Broker Compensation need not be paid if a contract is ratified on Property while Property is listed with another real estate company.

**Additional Listing Broker Compensation for Unrepresented Buyer.** If anyone produces a buyer ready, willing, and able to buy Property, and such buyer is not represented by a broker at the time of ratification of the sales contract, Seller will pay Broker the following (in addition to Broker Compensation):

⊠ 2.50 % of gross sales price, subject to Bankruptcy Court approval

**Variable Rate Compensation.** If applicable, Broker and Seller agree to variable rate compensation to be paid as follows:  N/A

The Client shall pay to the Broker, within three (3) days of execution of this Agreement, $ N/A for pre-approved marketing expenses.

☐ **Listing Broker Service Fee.** Seller will pay Broker an additional flat fee of $N/A as Listing Broker Service Fee if, during the term of Agreement, anyone produces a buyer ready, willing, and able to buy Property.

**Retainer Fee.** Broker acknowledges receipt of a retainer fee in the amount of $N/A which ☐ **will** OR ☐ **will not** be subtracted from Compensation. The retainer fee is non-refundable and is earned when paid.

**Early Termination**. In the event Seller wishes to terminate Agreement prior to the end of Agreement Term, Seller will deliver written notice to terminate the Agency Relationship between the Parties. The Parties will then execute a Release of Brokerage Representation Agreement to terminate the Brokerage Relationship between the Parties. Should termination be without good cause, Seller will pay Broker $ N/A as an early termination fee prior to executing the Release of Brokerage Representation Agreement, in addition to any compensation otherwise due pursuant to Agreement.

5.  ☐ **SELLER-PAID BUYER'S BROKER COMPENSATION.** Seller-Paid Buyer's Broker Compensation ("Buyer's Broker Compensation") is an amount Seller will pay to any broker(s) representing Buyer in this transaction ("Buyer's Broker"). Seller will pay Buyer's Broker the following amount:

Buyer's Broker Compensation:

⊠ 2.5  % of gross sales price, subject to Bankruptcy Court approval

Buyer's Broker Compensation is payable upon settlement. Seller understands that Buyer's Broker Compensation is negotiable and will ultimately be determined by a ratified sales contract between Seller and the buyer**.**

The Broker's fee is earned when any one of the following occurs during this Listing Agreement: (a) Client sells, exchanges, agrees to sell, or agrees to exchange all or part of the Property to anyone at any price on any terms; (b) Broker individually or in cooperation with another broker procures a buyer ready, willing and able to buy all or part of the Property at the Listing Price or at any other price acceptable to Client; (c) Client grants, or  agrees to grant, to another person an option to purchase all or part of the Property; (d) Client transfers, or agrees to transfer, all or part of Client's interest (stock and/or shares) in any entity that holds title to all or any part of the Property for the purposeof conveying all or part of the Property to another person; or (e) Client breaches this Listing Agreement

The Broker's fee, once earned, is payable at the earlier of  any of the following events: (a) the closing and funding of any sale or exchange of the Property or any part thereof;  (b) Client's refusal to sell the Property after the Broker's Fee has been earned; (c) Client's breach of this Listing Agreement; or (d) at such time as otherwise set forth in this Listing Agreement.

The Broker's fee is not payable if a sale of the Property does not close or fund as a result of: (a) Client's failure, without fault of Client, to deliver to a buyer a deed as required by  a contract to sell; (b) loss of Property ownership due to foreclosure or other legal proceeding; or  (c) Client's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the Property's sale.

If Client collects earnest money, advanced deposit, the sales price, or damages by suit, compromise, settlement or otherwise from a buyer who breaches a contract for the sale of all or part of the Property entered into during this Listing Agreement, Client will pay Broker, after deducting attorney's fees and out-of-pocket collection

DigiSign Verified - d26a9084-be9b-4d29-8a69-52b4168d4178

expenses, any amount equal to the lesser of one-half of the amount collected after deductions, or the Brokers Fee described herein. Any amount paid under this Paragraph is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

If the Broker advances any property maintenance or repair expenses on the Client's behalf, with Client's prior written approval, then Client shall reimburse the Broker those amounts within fifteen (15) days of Broker's invoice to the Client, or at Closing, whichever is earlier.

6. **SELLER SUBSIDY.** Seller Subsidy is a payment from Seller towards Buyer's charges and closing costs (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by lender(s), if any. Seller Subsidy reduces total proceeds to Seller at settlement.

  ☐ Seller **will not** consider Seller Subsidy.
  ☐ Seller **will** consider Seller Subsidy and authorizes Broker to market:
  ☒ Unspecified amount, subject to negotiated terms in a Purchase & Sale Agreement and Bankruptcy Court approval

7. **PROTECTION PERIOD.** The "Protection Period" refers to the time period starting the day after this Listing ends and continuing for days thereafter. Not later than seven (7) days after this Listing ends, Broker may send Client written notice specifying the names of persons and/or corporate entities whose attention Broker has called to the Property during the Listing. If Client agrees to sell, or lease, all or part of the Property during the Protection Period to a person and/or corporate entity(s) named in the notice, or to any entity created, owned and/or controlled by any person or corporate entity named in the notice, or to a relative or business of a person named in the notice, Client will pay Broker the amount Broker would have been entitled to receive if this Listing were still in effect upon the closing of the sale or upon execution of the lease,. For purposes of this paragraph: "Person" means any person in any capacity whether an individual or entity; "Sell" or "Lease" means any transfer of any interest in the Property whether by agreement, option, or sale of stock or shares. This Paragraph shall survive termination of this Listing Agreement. All amounts payable to the Broker are to be paid in US Dollars. Client authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a contract for the purchase, lease or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing. The Broker shall not receive a commission on the individual unit leases.

8. **ACCESS TO PROPERTY.** Authorizing access to the Property means giving permission to another person to enter the Property, disclosing security codes necessary to enter the Property to such person, and lending a key to the Property to such person. To facilitate the Property's showing for sale, Client instructs Broker and Broker's associates to access the Property at reasonable times, and authorizes other brokers, inspectors, appraisers, lenders, engineers, surveyors, and repair persons to enter the Property at such reasonable times. Further, Client shall provide Broker with duplicate keys to facilitate convenient and efficient showings. The Broker is authorized to put a Sentrilock© lockbox and/or a combination lockbox on the Property to allow for access by such persons described herein.

9. **COOPERATION WITH OTHER BROKERS.** Broker will allow other brokers to show the Property to prospective buyers and/or tenants.

10. **CONFIDENTIAL INFORMATION.** During this Listing and after it ends, Broker may not knowingly disclose information obtained in confidence from Client except as authorized by Client or required by law. The Broker may not disclose to Client any information obtained in confidence regarding any other person Broker represents or may have represented except as required by law.

CNM2 (8/24)    4    Client: _____ / _____ Broker: _____

If Confidential Information is provided to other parties, the Broker shall prepare and deliver to the Client a Confidentiality Agreement that the Client shall review, edit, and approve. The Broker shall require any person that requests Confidential Information to sign and return the Client-approved Confidentiality Agreement, unless agreed otherwise in writing by the Client.

11.    **BROKER'S AUTHORITY.** Broker will use reasonable efforts and act diligently to market the Property for Sale as provided in Paragraph 3, procure a buyer, and negotiate the sale of the Property. In addition to other authority granted by this Listing, Broker may advertise the Property by means and methods as Broker determines is appropriate in any media, including but not limited to: (a) creating and placing information about the Property, including exterior and interior photographs and videos, on the internet, on the Broker's website and on other websites as the Broker shall solely determine: (b) any print or digital advertisements; (c) listing services that may publicize the information on the internet or by other means; (d) reproduce, display and distribute information about the Property for purposes of marketing the property; (e) furnish comparative marketing, sales and leasing information about other properties to prospects; (f) disseminate information about the Property to other Brokers and prospects, including applicable disclosures, notices or other information that Client is required to make under law or a contract; (g) accept, in trust, any earnest money, option fee, security deposit or other money related to the purchase of the Property, and deliver such money for deposit in accordance with a contract for the sale of the Property; (h) disclose the sales price to other brokers, appraisers, other real estate professionals, and any other listing services into which information about the Property is placed; (i) place information about this Listing and a transaction for the Property on an electronic platform; (k) advertise that Broker "sold" the Property after a sale closing, or execution of a Property lease in which Broker was involved.

The Broker is not authorized to execute any document in the name of, or on behalf of Client, concerning the Property. Photographs, videos, and compilations of information submitted to a listing service are the property of the listing service for all purposes, pursuant to their subscriber content agreement. The Client acknowledges that data and/or images of the Property, once posted online, may not be retrievable.

12.    **SELLER REPRESENTATIONS**
Except as provided otherwise in this Listing, Client represents that:
A.    Client has title to the Property and all of its improvements and fixtures thereon, unless leased, and the legal capacity to convey the Property, subject to the approval of the US Bankruptcy Court;
B.    Client is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing, except for a third party property management company;
C.    No person or entity has any right to purchase, lease or acquire the Property by an option, right of first refusal, or other agreement;
D.    The property is being sold by a Chapter 7 Bankruptcy Trustee and all sales are subject to the approval of the US Bankruptcy Court;
E.    All information Client provides to Broker relating to the Property is true and correct to the best of the Client's knowledge, but the Broker understands the Property is being sold strictly in as-is, where-is condition.

13.    **CLIENT'S ADDITIONAL PROMISES**
Client agrees to:
   Cooperate with Broker to facilitate the showing and marketing of the Property;
A.    Not negotiate with any other prospective buyer who may contact Client directly, but instead refer all perspective buyers and tenants to Broker;

B.    Not enter into a listing agreement with another Broker for the sale, lease or exchange of the Property to become effective during this Listing;

C.    Provide Broker with copies of any available property information that will assist the Broker in representing the Property, including rent rolls, leases, operating expenses, drawings, renderings, surveys, environmental inspection reports, engineering reports, P&L statements, and any other relevant information that Broker may request during this Listing, <u>as available</u>;

D.    Advise Broker if any tenants move in or out of the Property, <u>when possible</u>;

E.    Complete any disclosures or notices if any material change occurs during this Listing;

**14.    LIMITATION OF LIABILITY**

If the property is or becomes vacant during this Listing, Client should notify Client's casualty insurance company and request a "vacancy clause" to cover the Property. Broker is not responsible for the security of the Property nor for inspection of the Property on any periodic basis.

Broker is not responsible or liable in any manner for personal injury to any person or loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker, including but not limited to injuries or losses caused by: (i) other brokers, inspectors, appraisers, lenders, contractors, surveyors, engineers, and other persons who are authorized to access the Property; (ii) acts of third parties, such as vandalism or theft; (iii) freezing or broken water pipes; (iv) any dangerous condition on the Property; (v) the Property's non-compliance with any law, association regulation or ordinance.

**15.    DEFAULT.** If Client breaches this Listing Agreement, Client is in default and will be liable to Broker for Broker's fee specified in Paragraphs 4, with such fees based on the List Price(s) in Paragraph 3, and any other fees and expense reimbursements Broker is entitled to receive under this Listing. If Broker breaches this Listing, Broker is in default and Client may exercise any remedy at law. This agreement shall be governed by the US Bankruptcy Court, District of Columbia.

**16.    AGENCY**

A.    Dual Agency is prohibited.

B.    Ministerial Acts. Client agrees that the Broker may perform ministerial acts for a buyer or tenant. A "ministerial act" is an act where the Broker assists a buyer or tenant to complete or fulfill a sales contract or lease for a client and an act that does not involve discretion or the exercise of the Broker's own judgment.

**17.    SECURITY SYSTEMS THAT MONITOR OR RECORD AUDIO.** Client is advised that State law prohibits audio recording and/or monitoring of private conversations without the consent of the parties.

**18.    OFFER PRESENTATION.** All written offers or counteroffers shall be presented to the Client in full as a hard copy or in an electronic format unless otherwise agreed to by the Client and Broker.

**19.    AGREEMENT OF THE PARTIES**

A.    <u>Entire Agreement.</u> This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B.    <u>Assignability</u>. Neither party may assign this Listing Agreement without the written consent of the other party.

C.    <u>Binding Effect</u>. Client's obligations to pay Broker an earned fee is binding upon the Client and the Client's heirs, administrators, executors, successors and permitted assigns, <u>subject to the approval of the US Bankruptcy Court</u>.

DigiSign Verified - d26a9084-be9b-4d29-8a69-52041684178

D.   <u>Governing Law.</u> The interpretation, validity, performance, and enforcement of this Listing shall be governed <u>by the laws of the Commonwealth of Virginia and the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division.</u>

E.   <u>Severability.</u> If a court finds any clause in this listing invalid or unenforceable, the remainder of this Listingwill not be affected, and all other provisions of this Listing will remain valid and enforceable.

F.   <u>Partial Sales.</u> If Client sells part of the Property before the date this Listing ends, this Listing will continue for the remaining part of the Property through the term of this Listing.

G.   <u>Notices.</u> Notices between the parties must be in writing and are effective when sent to the receiving party's address and email address specified in Paragraph 1.

H.   <u>Fees.</u> Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the NATIONAL ASSOCIATION OF REALTORS®, its local affiliates, or any listing service.  Broker's fees are negotiable.

I.   <u>**THIS IS A LEGAL DOCUMENT**</u>. Broker cannot give legal advice. This is a legally binding agreement. READ IT CAREFULLY. If you do not understand the effect of this Listing, consult your attorney BEFOREsigning.

20.   **EXCLUSION OF SERVICES AND ASSISTANCE.**  The Parties hereto understand and agree that the scope of the Brokers responsibilities **do not include** providing, nor shall Broker at any time during this agency be considered to have provided, information, advice, guidance, support, instruction, or any similar type of service or assistance ("Assistance") with regarding to matters other than selling and/or leasing the Property. This exclusion includes, but is not limited to, assistance raising capital; structuring partnerships or other such legal entities; drafting specific language for inclusion in a contract of sale or a lease; and participation in REIT's. Client acknowledges that: (i) neither the Broker nor the Agent intend to provide assistance other than with respect to the sale of the Property; (ii) Assistance other than with respect to selling the Property requires consultation with an attorney or other qualified professional; and, (iii) Broker advises that Client seek such legal or other professional services for any Assistance other than selling the Property.

Client hereby releases and discharges Broker, its agents, employees, officers, directors, subsidiaries, and all parties related to or affiliated with Broker of and from any and all claims and damages of any nature or kind arising out of, or in any way related to, Client's reliance on assistance from Broker other than as pertains to the selling of the Property.

Further, Broker advises Client, and Client acknowledges being so advised, to seek the advice of an attorney or other qualified professional as to the final terms of any contract of sale or lease *prior to execution of said contract of sale or lease.*

21.   **ADDENDA**. The following Addendum(s) are attached hereto and made part of this Listing:

(☐) Consent for Dual Agency

(☐) Multiple Property Addendum

(☐) Short Sale Addendum to the Listing Agreement

(☒) Other: <u>Bankruptcy</u> <u>Addendum</u>

Maryland Only

(☐) Lead Based Paint Addendum (Multi-Family Parties Only)

(☐) Notification of Dual Agency Within a Team in Maryland

Virginia Only

Client: _____ / _____     Broker: _____

(☐) Lead Based Paint Addendum (Multi-Family Parties Only)

Washington, DC Only
    (☐) Consent for Dual Representation and Designated Representation in the District of Columbia
    (☐) Jurisdictional Disclosure and Addendum to the Sales Contract for District of Columbia
    (☐) Lead-Based Paint Disclosure Form for DC Real Estate Sales
    (☐) TOPA Addendum (*Exempt, Not Applicable*)
    (☐) Other: Bankruptcy Addendum

22.  **ADDITIONAL TERMS:**

    <u>Property is being sold by a Bankruptcy Trustee. All sales & commissions are subject to US Bankruptcy Court
Approval, Case No. 25-11181-BFK. All property is being sold strictly in as-is, where-is" condition.</u>

| Agreed and accepted: | **CENTURY 21 Commercial New Millennium:** |
|---|---|
| *Lauren Friend McKelvey* | *Wendy Dean* |
| Client | Wendy Dean |
| Lauren Friend McKelvey | Supervising Broker |
| Not individually but solely in her capacity as | Title |
| Chapter 7 Trustee, *In Re: GMS Sunset LLC,* | |
| *Case No. 25-11181-BFK* | |
| 10/24/2025 | |
| Date | Date    10/24/2025 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Sales Associate Contact Information

Sales Associate (Listing Agent): <u>Stephen Karbelk</u>
Team Name (if applicable):  <u>RealMarkets</u>
Phone: (W) <u>703-556-4222</u>                    (M) <u>571-481-1037</u>
Email:  <u>Stephen@RealMarkets.com</u>

Sales Associate (Co-Listing Agent):  Stephanie Young
Team Name (if applicable):  RealMarkets
Phone: (W) 703-556-4222                    (M) 571-223-9775
Email:  stephanie@realmarkets.com

Sales Associate (Co-Listing Agent):  Robert Walters
Team Name (if applicable):  RealMarkets
Phone: (W) 703-556-4222                    (M) 703-401-5874
Email:  robert@realmarkets.com

Supervising Broker Contact Information

Broker Name:    Wendy Dean
Phone:          703-556-4222
Email:          wendy.dean@c21nm.com

© New Millennium RE, Inc. d/b/a/CENTURY 21 Commercial New Millennium 2024

This document is the exclusive property of New Millennium RE, Inc. and is intended solely for the use by agents affiliated with CENTURY 21 Commercial New Millennium. Any other use or copying of this document is strictly prohibited without the prior written consent of New Millennium RE, Inc.



BANKRUPTCY ADDENDUM TO EXCLUSIVE RIGHT TO SELL COMMERCIAL REAL ESTATE
LISTING AGREEMENT
LAUREN FRIEND MCKELVEY, TRUSTEE ("SELLER")

Property Address:  294 Sunset Park Drive, Unit 11, Herndon, VA 20170 ("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Listing Agreement.

(1) This Listing Agreement is subject to the approval of the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division ("Court").  Broker and Seller understand that the Court may not approve the Listing Agreement.  Broker understands that the commissions provided for in this Listing Agreement and any contract for the sale of the Property are also subject to Court approval.

(2) Conveyance will be by SPECIAL WARRANTY of title.

(3) The Property, and any contents being conveyed therein is being sold "AS IS, WHERE IS CONDITION."  The sale of the Property is subject to Court approval.

(4) No Dual Agency.  The Seller does not consent to dual representation.  Thus Seller does not allow the property to be shown to a potential buyer represented by the Broker through the same sales associate that is also listing the Property for the Seller.

 (5) Limited Designated Representation.  The Seller does not consent to designated representation when the agent representing the potential buyer is in the same office with the same supervising broker as the listing agent representing the Seller.  The Seller does consent to designated representation when the agent representing the potential buyer is in a different office with a different supervising broker as the listing agent representing the Seller but only as long as the Court approves such designated representation by deciding the designated representation did not violate the Broker's duties and obligations owed to the Seller.

(6) In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the Court.

(7) Unless agreed otherwise, any contract for the sale of the property shall provide that the seller shall pay no more than $500.00 in closing cost excluding payment of customary Seller paid recording fees, transfer fees, taxes and brokerage commissions. All other cost of closing shall be paid by the buyer.

This Addendum shall not alter, modify or change in any other term or provision of the Listing Agreement, and except as modified herein, all of the terms and provisions of the Listing Agreement are expressly ratified and confirmed and shall remain in full force and effect.

SELLER:                                          BROKER/SALES MANAGER:

*Lauren Friend McKelvey*                         *Wendy Dean*
_____                 _____
Lauren Friend McKelvey, Trustee, not individually   Wendy Dean, Managing Broker
but solely in her capacity as chapter 7 Trustee
in Bankruptcy; *In Re: GMS Sunset LLC,*
*Case No. 25-11181-BFK*
                                                 Date: ___10/24/2025___

Date: ___10/24/2025___

**<u>Exhibit B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:                                    )
                                          )
GMS SUNSET LLC                            )      CASE NO.  25-11181-BFK
                                          )
            Debtor.                       )      CHAPTER 7
_____)

## DECLARATION OF REAL ESTATE AGENT

I, Stephen Karbelk, declare as follows:

1.      I am a real estate agent duly licensed by the Commonwealth of Virginia and affiliated with CENTURY 21 Commercial New Millennium. I am the Team Leader of RealMarkets, a CENTURY 21 Commercial New Millennium Team.  Stephanie Young and Robert Walters are licensed real estate agents on my team that will be supporting me with this listing.

2.      I am familiar with the Trustee's Application to Employ Real Estate Agent and Broker for the sale of the property at 294 Sunset Park Drive, Suite 11, Herndon, VA 20170("Property") described therein, and believe that my team and I are qualified to represent the Trustee and the estate in connection with the marketing of the Property. I have read the Trustee's Application, and I have agreed to accept employment on the terms and conditions set forth in the Trustee's Application.

3.      I am a disinterested person within the meaning of 11 U.S.C. § 101(14).  I have also confirmed with Stephanie Young and Robert Walters that they are disinterested persons within the meaning of 11 U.S.C. § 101(14).

4.      That to the best of my knowledge, Stephanie Young, Robert Walters, or I  have no interest adverse to the Trustee or the bankruptcy estate in the matters upon which we are to be engaged by the Trustee, and have no connection with the Debtor, its creditors, other parties in

1

interest, their respective attorneys or accountants, purchasers or potential purchasers of the subject

real estate, the United States Trustee, or anyone employed by the United States Trustee except that

(a) I have worked for the Trustee in other unrelated bankruptcy cases, (b) I have worked with David

Tabakin, counsel for the Trustee, in other unrelated bankruptcy cases, and (c) another agent on my

real estate team, Ryan Rauner, CCIM, currently has another commercial property in the same

business park as the subject property under contract in an unrelated transaction.

   I declare under penalty of perjury that the foregoing is true and correct.

Stephen Karbelk
Licensed Real Estate Agent

Date: ___ 10/23/25 ___

2

**<u>Exhibit C</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| In re: | **Case No. 25-11181-BFK** |
| **GMS Sunset LLC**<br>**Debtor.** | **Chapter 7** |

**ORDER AUTHORIZING EMPLOYMENT OF**
**REAL ESTATE AGENT AND LISTING BROKER**

The Court having considered the Application for Employment of Real Estate Agent and Listing Broker filed by Lauren Friend McKelvey, Trustee, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of GMS Sunset LLC (the "**Debtor**"), in the above- referenced Chapter 7 case to employ Stephen Karbelk and RealMarkets (supported by Stephanie Young and Robert Walters) (collectively, "**Agent**") as Trustee's real estate agent, and Agent's affiliated listing broker, CENTURY 21 Commercial New Millennium ("**Listing Broker**") to sell the real property located at 294 Sunset Park Drive, Suite 11, Herndon, VA 20170 (the "**Property**"), and the Declaration of Stephen Karbelk in support thereof, and **IT APPEARING** that Agent and Listing Broker are disinterested persons and do not hold or represent an interest adverse to the Estate, and that the employment of Agent and Listing Broker by the Trustee is in the best interest of this Estate, it is hereby **ORDERED** that:

1.      Lauren Friend McKelvey, chapter 7 trustee, is authorized, pursuant to 11 U.S.C.

Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email:    LMcKelvey@reitlerlaw.com
                DTabakin@reitlerlaw.com

*Proposed Counsel for the Chapter 7 Trustee*

§ 327(a) to employ Stephen Karbelk and RealMarkets (supported by Stephanie Young and Robert Walters) as the Trustee's real estate agent, and agent's affiliated listing broker, CENTURY 21 Commercial New Millennium, as real estate agent and listing broker to market and sell the Property subject to the terms and conditions set forth in the Application.

2.      Agent is authorized to put all utility accounts, including the electric, gas, and water accounts, into the name of Stephen Karbelk, Stephanie Young or RealMarkets, as Agent for the Trustee; that Agent shall not be responsible for paying any past due amounts that were incurred prior to the petition date of the bankruptcy filing; that Agent is also authorized to incur property maintenance and property preservation services and expense; and that, subject to further order and approval of this court, Agent shall be reimbursed for all utility expenses, title search expenses, property maintenance expenses and property preservation expenses, and property owners association resale package expenses, if applicable, upon the sale of the Property.

3.      Compensation to Agent and Listing Broker shall only be paid upon further Order of this Court.

4.      No agent or broker in any CENTURY 21 Commercial New Millennium office may represent a buyer for the purchase of the Property without express Court approval; provided, however, that an agent or broker operating from a franchised, independently owned and operated CENTURY 21 office may represent a buyer for the purchase of the Property; and that any provision in the Listing Broker's listing agreement allowing designated representation or dual representation by agents or brokers in a CENTURY 21 Commercial New Millennium office is not approved and not permitted except as set forth herein or as otherwise ordered by the Court.

Dated:_____                    _____
                                                 Brian F. Kenney
                                                 United States Bankruptcy Judge

I ask for this:


/s/_____
Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email: LMcKelvey@reitlerlaw.com
       DTabakin@reitlerlaw.com

*Proposed Counsel for Chapter 7 Trustee*


SEEN AND NO OBJECTION:


/s/_____(Permission to affix signature received via email dated _____)
Michael T. Freeman
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
Tel: 703-557-7274
Fax: 703-557-7279
Email: michael.t.freeman@usdoj.gov

## **Local Rule 9022-1(C) Certification**

The foregoing Order was endorsed and/or served upon all necessary parties pursuant to Local Bankruptcy Rule 9022-1(C).

          /s/
          David N. Tabakin

Copies to: recipients of electronic notice

3