**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| In re: | **Case No. 25-11181-BFK** |
| **GMS Sunset LLC**<br>**Debtor.** | **Chapter 7** |

## TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR
## OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
(294 & 276 Sunset Park Drive, Herndon, VA 20170)

Lauren Friend McKelvey, Trustee, and not individually but solely in her capacity as the

Chapter 7 trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of GMS

Sunset LLC (the "**Debtor**"), in the above- referenced Chapter 7 case (the "**Case**"), pursuant to §§

363(b) and (f) of the Bankruptcy Code,[1] Bankruptcy Rules 2002(a)(2), 2002(c), 6004, and 9014,

and Local Rules 6004-1 and 6004-2, and respectfully requests entry of an Order authorizing the

sale of a certain parcel of improved real property, more particularly described below, free and clear

of any and all liens, claims, encumbrances, and interests, with all valid liens, claims,

encumbrances, and interests attaching to the proceeds of sale, and in support thereof respectfully

states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C.

---

1 Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–
1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email:    LMcKelvey@reitlerlaw.com
          DTabakin@reitlerlaw.com

*Counsel for the Chapter 7 Trustee*

§§157 and 1334. This is a core proceeding pursuant to the provisions of 28 U.S.C. §157(b)(2)(N) and (O). Venue is proper in this District and Division pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§363 and 105.

## Background

2.        On June 11, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On October 15, 2025, the Debtor's case was converted to one under chapter 7. ECF No. 36.

3.        The Trustee was thereafter appointed and remains the duly qualified and acting Trustee in this case.

4.        On the Petition Date, Debtor owned improved real property located at 294 & 276 Sunset Park Drive, Herndon, Virginia 20170, Tax Map No. 0173 09 0012 having a legal description:

> Units 11 and 12, Sunset Business Condominium, according to a Declaration recorded in Deed Book 5876, page 13, among the land records of Fairfax County, Virginia, and by Amendment to Declaration recorded in Deed Book 14736, page 108, together with an undivided interest in the Condominium Common Elements as defined in the Declaration and the Virginia Condominium Act.

(the "**Property**"). The Property is two business condominiums. The Property was acquired by the Debtor on August 29, 2003.

5.        The Property is encumbered by the following liens of record:

a.        A first position consensual lien evidenced by a *Deed of Trust* dated September 8, 2004, and recorded September 10, 2004, as Instrument No. 16490 (the "**Deed of Trust**") among the Fairfax County Land Records, to the order of Virginia Asset Financing Corporation ("**VAFC**"), in the original principal amount of $469,000, securing a *Note* dated

2

October 13, 2004, as assigned from VAFC to the U.S. Small Business Administration and then to

Business Finance Group, Inc. ("Business Finance"). Pursuant to proof of claim 3, approximately

$231,151.09 is due to Business Finance on the Deet of Trust.

      b.     Two judgment liens filed by the Sunset Business Condominium Association

(the "SBCA") as follows: (i) Case No. GV22009036-00 entered November 17, 2022 in the amount

of $7,497.00 with interest at 6% from the date of judgment, and attorney's fees of $1,119.00,

recorded on January 4, 2023, as judgment number 649923, Book 00293 Page 2098; and (ii) Case

No. GV22009037-00 also entered November 17, 2022 in the amount of $7,633.00 with interest at

6% from the date of judgment, and attorney's fees of $1,119.00, recorded on January 4, 2023, as

judgment number 649922, Book 00293 Page 2097 (collectively, the "**Condo Judgments**");

      c.     A judgment lien dated May 8, 2019, and recorded October 16, 2019, as

Judgment Number 618221 in Book 00269 at Page 0858 in the Fairfax General District Court

against the Debtor and in favor of the Town of Herndon ("**Herndon**") in the amount of $3,163.87,

plus costs and 6% interest (the "**Herndon Judgment**"); and,

      d.     Two Memorandum of Condominium Liens dated: (i) May 17, 2021, in the

amount of $4,041, recorded at Book 27157 Page 0644 on June 8, 2021; and (ii) June 2, 2022, in

the amount of $1,347, recorded at Book 27677 Page 1115 (collectively, the "**Condo Liens**").

Pursuant to amended proofs of claim 4 and 5 (which encompass the Condo Liens, Condo

Judgments, and ongoing condo dues), the SBCA is due approximately $16,584.61 on a secured

basis, and $29,537.00 as a general unsecured claim. The proofs of claim cover the period through

October 2025, and following discussion with the SBCA, the amount of combined monthly

assessments for the Property is $882.00, and therefore the SBCA is due an estimated additional

$3,528.00 for the months between October 2025 and the estimated closing date, plus any applicable legal fees or late fees.

6.      On November 17, 2025, the Court entered an *Amended Order* (ECF No. 49) authorizing the Trustee to employ Stephen Karbelk as the real estate agent and team leader of RealMarkets and their affiliated broker, Century 21 Commercial New Millennium, with the support of Stephanie Young and Robert Walters (collectively, "Agent/Broker"), as the Trustee's real estate agent and broker for the purpose of marketing the Property for sale.

7.      The Trustee has now entered into a *Commercial Purchase Agreement* (the "**Sales Contract**") dated December 17, 2025, and ratified on December 22, 2025, whereby she has agreed to sell the Property to OME West LLC and or assigns ("**Purchasers**") for the total purchase price of $1,370,000 (the "**Purchase Price**"). The Purchasers' real estate agent, Papadopoulos Properties ("**Buyer's Agent**"), is holding an earnest money deposit of $50,000 from the Purchasers. The Sales Contract is subject to Bankruptcy Court approval. The Property is being sold in "as-is, where-is" condition and is subject to higher and better offers. Title will be conveyed by special warranty deed. A copy of the *Sales Contract*, which has been signed by the Trustee, is attached and incorporated by reference as <u>Exhibit A</u>.

8.      The *Sales Contract* was negotiated at arm's length, and the Purchasers have no connection with the bankruptcy estate or any creditor in this case. The Purchasers are not "insiders" of the Debtor as that term is defined in 11 U.S.C. § 101(31).

9.      The sale of the Property to the Purchasers will produce net proceeds that are sufficient to pay all claims in full.

10.     Business Finance Group is not expected to object to the sale of the Property free

and clear of its lien because it will receive full payment of their secured claim.

## Relief Requested

11.     By this Motion, the Trustee seeks approval of the terms and conditions of the Sales Contract, including authority to convey the Property to the Purchasers, free and clear of any and all liens, claims, encumbrances and interests, with all known valid liens, claims, encumbrances and interests attaching to the proceeds of sale in the same order of priority as they attached prepetition to the Property.

12.     The Trustee would propose to distribute the proceeds of sale from the Property at closing to pay (i) all unpaid real estate taxes and condo association fees; (ii) all costs of sale, including a brokerage fee of five and one-half percent (5.5%) of the Purchase Price, with three percent (3.0%) paid to the Agent/Broker and two and one-half percent (2.5%) paid to Buyer's Agent, and all claims.

## Argument

13.     Section 363(b) of the Bankruptcy Code permits a trustee to sell property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Further, § 105(a) of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     The bankruptcy court's power to authorize a sale under § 363(b) is an exercise of its discretion. *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation)*, 722 F.2d 1063 (2d Cir. 1983). Factors to be considered in determining whether to approve a sale of assets under § 363(b) include: (i) whether a sound business reason exists for the

proposed transaction, (ii) whether fair and reasonable consideration is being provided, (iii) whether the transaction has been proposed and negotiated in good faith, and (iv) whether adequate and reasonable notice has been provided. *See, e.g.*, *In re Ewell*, 958 F.2d 275 (9th Cir. 1992) (affirming sale where price was fair and reasonable and buyer was good faith purchaser).

15.     In this case, the Trustee is charged with liquidating the assets of the bankruptcy estate and therefore has a sound business reason for selling the Property. The Trustee is advised by her Realtor that the consideration offered by the Purchasers is fair and reasonable. The terms of sale were negotiated at arm's length and in good faith. Adequate and reasonable notice is being provided as set forth below.

16.     Pursuant to the provisions of § 363(f) of the Bankruptcy Code, the Trustee proposes to sell the Property free and clear of all liens, claims, encumbrances, and interests, with any valid liens, claims, encumbrances, and interests attaching to the proceeds of sale in the same order of priority as they attached prepetition to the Property. As noted above, the only known liens encumbering the Property are the liens evidenced by the Deed of Trust, Condo Judgments, Herndon Judgment, and Condo Liens. There are no other known liens encumbering the Property.

17.     There are five alternative bases for selling property free and clear of any interest in such property under § 363(f) of the Bankruptcy Code: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

18.     In this case, Business Finance Group is deemed to have consented to the sale of the

Property free and clear of its lien because they will be paid in full at closing from the proceeds of sale based upon the senior priority of their lien. 11 U.S.C. § 363(f)(2). All other liens will be paid in full at closing.

19.    Notice of this sale will be provided in accordance with the requirements of Bankruptcy Rules 6004(a) and (c) and 2002(a)(2) and (c).

20.    To avoid the additional accrual of interest on the Deed of Trust and condo fees to the SBCA, the Trustee would like to proceed to closing as soon as possible after entry of an order approving the relief requested in this Motion. In order to permit a swift closing on the *Sales Contract*, the Trustee would request that the Court waive the fourteen-day stay provided by Bankruptcy Rule 6004(h).

<u>**Conclusion**</u>

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court enter an Order (a) approving the terms and conditions of the *Sales Contract* and authorizing the sale of the Property to the Purchasers, free and clear of all liens, claims, encumbrances, and interests, with all valid liens, claims, encumbrances and interests attaching to the proceeds of sale; (b) authorizing the disbursement of the proceeds of sale at closing to pay: (i) all unpaid real estate taxes and condo owners' association fees; (ii) all costs of sale, including a brokerage fee of five and one-half percent (5.5%) of the Purchase Price, with three percent (3.0%) paid to the Agent/Broker and two and one-half percent (2.5%) paid to Buyer's Agent; and (c) providing such other and further relief as the Court deems just and proper.

**LAUREN FRIEND MCKELVEY, TRUSTEE**

Dated:   January 28, 2026          Respectfully submitted,

/s/ *David N. Tabakin*
Lauren Friend McKelvey (VSB No. 78813)
David N. Tabakin (VSB No. 82709)
Reitler Kalais & Rosenblatt, LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Main: 212-209-3050 | Fax: 212-371-5500
Email:  LMcKelvey@reitlerlaw.com
           DTabakin@reitlerlaw.com

*Counsel for the Chapter 7 Trustee*

## **Exhibit A**

DigiSign Verified - 779553bd-4720-45b6-a11c-09af07303b73
DigiSign Verified - df4fabed-818b-4f84-9527-ff845f44fff1



## COMMERICAL PURCHASE AGREEMENT

> Each commercial transaction is different. This form may not address your specific purpose. This is a legally binding document. If not understood, seek competent advice before signing.

This Commercial Purchase Agreement (the "Agreement") is dated **12/17/2025**   between **Lauren McKelvey, Trustee**          ("Seller") and **OME West LLC and or assigns**          ("Purchaser"). The parties acknowledge that **Century 21 New Millennium** **Commercial** ("Listing Broker") represents Seller and that **Papadopoulos Properties**          ("Selling Broker") represents [**select one**]: ☐ Seller ☐ Purchaser. The parties further acknowledge that disclosure of the brokerage relationships was made to them by the real estate licensees involved in this transaction when specific assistance was first rendered and confirmed in writing.

1. **SALE OF PROPERTY** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and all rights and appurtenances thereto belonging, located in the City/County of **Herndon/ Fairfax** , Virginia, with a tax parcel no. of **0173090011**    and a street address of **294 & 276 Sunset Park Drive, Herndon, VA 20170**. Seller discloses that [**select one**]: ☐ there are no tenants or other parties in possession of the Property **OR** ☑ there are tenants or persons who are in possession of the Property as set forth on **SCHEDULE A** attached hereto.

2. **PURCHASE PRICE** The purchase price for the Property is **One million four hundred fifty thousand and 00/10** **$1,370,000.00** Dollars ($ ~~1,450,000.00~~ ) (the "Purchase Price") and shall be paid to Seller at Settlement, subject to the prorations and adjustments described herein, as follows:

   *LFM*

   A. **Deposit** Purchaser shall make a deposit of $ **50,000.00**   (the "Deposit") to be held by **RL Title & Escrow**          (the "Escrow Agent"). Purchaser [**select one**]: ☐ has paid the Deposit to the Escrow Agent **OR** ☐ will pay the Deposit to the Escrow Agent within **5**  days after this Agreement is fully executed by both parties. If Purchaser fails to pay the Deposit as set forth herein, then Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. The Deposit may be held in an interest bearing account and the parties waive claim to any such interest. The Deposit shall be applied towards the Purchase Price at Settlement. If Settlement does not occur, the Deposit shall be paid as provided herein.

   B. **Balance** The balance of the Purchase Price shall be paid by Purchaser at Settlement in certified funds or bank wire (inclusive of any loan obtained by Purchaser to purchase the Property).

3. **SETTLEMENT**

   **Or within 20 Days of Bankruptcy Court Approval**
   A. **SETTLEMENT OF PROPERTY** Settlement of the purchase and sale of the Property shall be made at **RL Title & Escrow**          on **02/27/2026**         . ("Settlement"). Possession of the Property shall be delivered to Purchaser at Settlement.  *LIM PH AH*

   B. **DELIVERIES BY SELLER AT SETTLEMENT** At Settlement, Seller shall deliver to Purchaser the following:

   *LIM PH AH*  (i) A ~~general~~ **special** warranty deed ~~with full English covenants~~ of title (the "Deed") conveying to the Purchaser good and marketable fee simple title to the Property, free and clear of all

liens, encumbrances, conditions and restrictions, except any lien for real estate taxes not yet due and payable, and any Title Objections for which Purchaser has no objection and/or has waived such objection pursuant to Paragraph 5;

(ii) An affidavit for the benefit of Purchaser and its title insurer, satisfactory to Purchaser's title company (the "Affidavit") stating that (1) no right to a mechanic's or materialman's lien has accrued with respect to the Property as a result of any act or omission by the Seller **AND** (2) there are no outstanding leases or agreements with regard to, or other parties in or entitled to possession of, the Property except as disclosed in **SCHEDULE A** attached hereto;

(iii)A Certificate of Non-Foreign Status as required by Section 1445 of the Internal Revenue Code of 1986 and any other certificates required by any governmental authority or agency;

(iv)~~If the Property is leased, a tenant estoppel certificate and an assignment of lease (including the transfer of the security deposit at Settlement) for each and every tenant of the Property, in forms acceptable to Purchaser; and~~

*LJM*
*PH*    Sold As-Is - FYI: While the property is leased on a month to month basis, we're not going to be
*AH*    able to get an estoppel certificate from the tenant.
(v) Such other Seller certifications as Purchaser's lender or title company may reasonably require.

**C. COSTS AND PRORATIONS** Seller shall pay the costs of preparing the Deed, the Grantor's tax thereon and any other expenses incurred by Seller. Purchaser shall pay for the title search, title insurance premiums, survey expenses, lender fees, Grantee's tax and all other settlement expenses incurred by Purchaser. Real estate taxes, ~~rent~~, CAM and assessments, as applicable, shall be prorated between Seller and Purchaser as of the date of the Settlement. Each party shall pay its own legal, accounting and other expenses incurred in connection with this Agreement or Settlement.

**D. CONDITION OF PROPERTY** Purchaser agrees to accept the Property at Settlement in its physical condition at the time this Agreement is fully executed by all parties, except as otherwise provided herein. Seller agrees to maintain the Property in good condition and repair until Settlement. At Settlement, Seller agrees to transfer to Purchaser all existing warranties, if any, on the Property's roof, structural components, HVAC, mechanical, electrical, security and plumbing systems.

## 4. FEASIBILITY PERIOD

**A.** For a period of **Thirty** ( **30** ) days following execution of this Agreement by all parties (the "Feasibility Period"), Purchaser, its agents and contractors, shall have the right to: (i) enter the Property for the purpose of inspecting the Property and performing tests as are desirable to Purchaser in its sole and absolute discretion; (ii) seek zoning information from the local governing authority concerning Purchaser's intended use of the Property; and/or (iii) apply for lender financing to acquire the Property.

**B.** Within five (5) days after Seller's receipt of a fully executed copy of this Agreement, if not previously delivered, Seller shall deliver to Purchaser copies of the following materials related to the Property if in Seller's possession: (i) any Phase I or other environmental studies; (ii) a

current survey; (iii) the most current owner's title insurance policy; and (iv) all leases and rent rolls for each tenant identified in **SCHEDULE A** (including without limitation, the base monthly rental and all taxes, insurance, and other pass-throughs paid by the tenant), and all contracts affecting the Property that are not terminable at will. Items (i) through (iv) are collectively referred to as the "Materials".

C. If Purchaser is not satisfied in its sole and absolute discretion with all aspects of the Property (including zoning) or the Materials, or has not obtained financing upon terms and conditions satisfactory to Purchaser, then Purchaser shall have the right, upon written notice to Seller prior to the expiration of the Feasibility Period, to terminate this Agreement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11. Purchaser acknowledges that the Feasibility Period will not be extended for any reason, regardless of whether Purchaser has completed its inspections or zoning inquiry, or has obtained financing.

D. If Purchaser fails to acquire the Property, Purchaser agrees: (i) to repair any damage arising as a result of its exercise of the right of access granted in this Paragraph 4; (ii) to indemnify and hold Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of Seller's negligence or misconduct or the negligence or misconduct of Seller's agents, employees or contractors; and (iii) upon demand to return the Materials to Seller.

5. **TITLE AND SURVEY OBJECTIONS** Purchaser may, at its sole expense, obtain a title insurance commitment and a survey for the Property. Prior to the expiration of the Feasibility Period, Purchaser shall notify the Seller in writing as to any title or survey objections regarding the Property that the Purchaser is unwilling to accept (collectively the "Title Objections"). Seller shall advise Purchaser in writing within ten (10) days after receipt of such notice, which if any of the Title Objections will not be cured by Seller at or prior to Settlement. If Seller fails to respond to Purchaser within such ten (10) day period or if Seller's response indicates that it does not intend to cure one or more of the Title Objections, then Purchaser may, at its option either (i) terminate this Agreement by giving written notice to Seller; (ii) cure such Title Objections at its own expense and proceed to Settlement with no reduction in the Purchase Price; or (iii) waive such Title Objections and proceed to Settlement, with no reduction in the Purchase Price. If Purchaser elects to terminate this Agreement, the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

6. **CONDITIONS PRECEDENT TO OBLIGATION OF PURCHASER** This Agreement and all of Purchaser's obligations hereunder are further subject to Purchaser determining in its sole and absolute discretion that all of the conditions set forth in this Paragraph 6 have been satisfied or waived in writing by Purchaser. In the event that any of the following conditions are not satisfied or waived by Purchaser, Purchaser may give written notice to Seller terminating this Agreement on or before Settlement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

A. **SELLER'S REPRESENTATIONS AND WARRANTIES** All the representations and warranties of Seller made herein shall have been true when made and shall be true and correct as of Settlement, with no material changes therein.

B. **SELLER'S DELIVERIES** As of Settlement, Seller shall have taken all action and delivered all documents and materials required by this Agreement.

C. **NO LITIGATION** As of Settlement, there shall be no litigation, proceeding or investigation pending, or to the knowledge of Purchaser or Seller threatened, which might prevent or adversely affect the intended use of the Property or which questions the validity of any action taken or to be taken by Seller or Purchaser hereunder, or which threatens the continued operation of the Property for commercial purposes.

7. **REPRESENTATIONS AND WARRANTIES OF THE SELLER** Seller, jointly and severally (if more than one Seller), represents and warrants unto Purchaser as of the date hereof and on the Settlement date that:

A. **AUTHORITY AND MARKETABLE TITLE** Seller is the owner of the Property, possesses the requisite authority to enter into and perform this Agreement, and has the absolute right to sell, assign, and transfer the Property to Purchaser at Settlement.
   **Subject to US Banruptcy Court Approval.**

*LJM*
*PH*
*AH*

B. ~~NO PENDING LITIGATION OR BANKRUPTCY There are no actions, suits or proceedings at law or in equity pending, threatened against, or affecting the Property before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality. No bankruptcy or similar action, whether voluntary or involuntary, is pending or is threatened against Seller, and Seller has no intention of filing or commencing any such action within ninety (90) days following Settlement.~~

C. **NO OUTSTANDING PURCHASE OPTION** No option, right of first refusal or other contractual opportunity to purchase the Property has been granted to, or executed with, a third-party that is enforceable against Seller and/or the Property giving such third-party a right to purchase an interest in the Property or any party thereof.

D. **NO NOTICE OF REPAIRS** Seller has received no written notice from any governmental agency that repairs, alterations or corrections that must be made to the Property.

E. **UTILITIES** The Property is connected to ☒ a municipal water and sewer system and has utility meters installed within the Property **OR** ☐ a well and septic system located on the Property. Seller makes no representation on whether the capacities of such utilities are sufficient for Purchaser's intended use of the Property.

F. **HAZARDOUS MATERIALS** To the best of Seller's actual knowledge, no toxic or hazardous materials (as said terms are defined in any applicable federal or state laws) have been used, discharged or stored on or about the Property in violation of said laws, and to the best of Seller's knowledge, no such toxic or hazardous materials are now or will be at Settlement located on or below the surface of the Property. There are no petroleum storage tanks located on or beneath the surface of the Property.

G. **PARTIES IN POSSESSION** As of the Settlement date, there will be no adverse or other parties in possession of the Property or any part thereof, nor has any party been granted any

license, lease or other right or interest relating to the use or possession of the Property or any part thereof, except for the Leases attached hereto and made a part hereof as **SCHEDULE A**.

**H. OTHER CONTRACTS** Seller is not a party to any contracts relating to the Property that is not terminable at will, except as disclosed on **SCHEDULE B**, which is attached hereto and made a part hereof. Between the date of this Agreement and the Settlement date, Seller will not, without the prior written consent of Purchaser, which consent shall not be unreasonably withheld, enter into any contract relating to the Property that is not terminable at will.

**I. NO UNDISCLOSED RESTRICTIONS** Seller has not, nor to the best of Seller's knowledge or belief has any predecessor in title, executed or caused to be executed any document with or for the benefit of any governmental authority restricting the development, use or occupancy of the Property that has not specifically been disclosed to Purchaser or wouldn't be revealed by a title report.

8. **RISK OF LOSS** The risk of loss or damage to the Property by fire or other casualty prior to Settlement shall be on the Seller. If such loss or damage materially and adversely affects the use of the Property as of Settlement, Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

9. **CONDEMNATION** If, prior to Settlement, any taking pursuant to the power of eminent domain is proposed or occurs, as to all or any portion of the Property intended to be acquired at Settlement by the Purchaser, or sale occurs in lieu thereof, the Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

10. **ACCESS/COOPERATION** During the term of this Agreement, Purchaser and his duly authorized agents shall be entitled to reasonable access to the Property for the purpose of surveying, appraising and making other findings related to the Property. Purchaser agrees to indemnify and hold the Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of the Seller's gross negligence or willful misconduct.

11. **AGENTS AND BROKERS** Each party represents and warrants that it did not consult or deal with any broker or agent with regard to this Agreement or the transaction contemplated hereby, except for the Listing Broker and the Selling Broker, and each party hereto agrees to indemnify and hold harmless the other party from all liability, expense, loss, cost or damage, including reasonable attorneys' fees, that may arise by reason of any claim, demand or suit of any agent or broker arising out of facts constituting a breach of the foregoing representation and warranty. Listing Broker shall be paid a brokerage fee by Seller of ☑ 3 % of the Purchase Price. Selling Broker shall be paid by Seller a fee of ☑ 2.5 % of the Purchase Price. The fees to the Listing Broker and the Selling Broker shall be paid in cash at settlement.

12. **NOTICES** Any notice, request or demand required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed sufficiently given if, delivered by hand or messenger at the address of the intended recipient, sent prepaid by Federal Express (or a

comparable guaranteed overnight delivery service), or deposited in the United States first class mail (registered or certified, postage prepaid, with return receipt requested), addressed to the intended recipient, at the intended recipient's address set forth below, or at such other address as the intended recipient may have specified by written notice to the sender given in accordance with the requirements of this Paragraph. Any such notice, request or demand so given shall be deemed given on the day it is received by the recipient.

For the Seller:

Stephanie@realmarkets.com

Stephen@realmarkets.com

dtabakin@reitlerlaw.com

For Purchaser:

CGogos@papadop.com

## 13. DEFAULT

A. **DEFAULT BY PURCHASER** If Purchaser defaults under this Agreement, the damages suffered by Seller would be difficult to ascertain. **Therefore, Seller and Purchaser agree that, in the event of a default by Purchaser, Seller's sole and exclusive remedy, in lieu of all other remedies, shall be to terminate this Agreement and retain the Deposit as full and complete liquidated damages.** If the Deposit is retained as liquidated damages, Seller agrees to pay one-half of the Deposit to the Listing Broker to compensate Broker for his brokerage services in the transaction. Such payment shall have no effect on the payment due in any subsequent transaction. Seller hereby specifically waives the right to seek specific performance of this Agreement by Purchaser or any other remedy at law or in equity, provided that Seller reserves the right to all remedies available at law and in equity solely in order to enforce the indemnification obligations of Purchaser under Paragraphs 4D., 10 and 11 herein.

B. **DEFAULT BY SELLER** If Seller defaults under this Agreement, Purchaser shall have the option to (i) seek specific performance of this Agreement, or (ii) terminate this Agreement, in which event the Deposit shall be promptly refunded to Purchaser. ~~Seller shall be liable for Purchaser's expenses in the filing of any specific performance action, including reasonable attorney's fees and court costs.~~

&ZM
PH

AH C. **RIGHT TO CURE DEFAULT** Prior to any termination of this Agreement as provided in Subparagraphs 13A. and 13B., the non-defaulting party shall provide written notice of any default(s) to the defaulting party (the "Default Notice") permitting the defaulting party ten (10) days to cure any such default(s). If defaulting party does not cure the default(s) or does not respond to the Default Notice, then the non-defaulting party may terminate the Agreement by written notice to the defaulting party. Nothing herein shall prevent either party from seeking a judicial determination regarding any default; provided however, the court shall award the expenses of attorney's fees and court costs to the prevailing party in any such action.

D. **BROKERAGE FEES** Notwithstanding the remedies set forth in Subparagraphs 13A., 13B, and 13C, if either Seller or Purchaser defaults under this Agreement, the defaulting party shall be liable for the full amount of the brokerage fees set forth in Paragraph 11 and any brokerage fees set forth in Seller's listing agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's listing agreement had been performed, and for any damages and all expenses incurred by the Listing Broker and the Selling Broker in connection with this transaction and the enforcement

DigiSign Verified - fc872ab7-9d69-464b-8858-8ba80dd1121b

Case 25-11181-BFK    Doc 56    Filed 01/28/26    Entered 01/28/26 15:13:13    Desc Main
Document    Page 16 of 25
DigiSign Verified - 779553bd-4720-45b6-a11c-09af07303b73

of this Agreement and Seller's listing agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's listing agreement.

## 14. MISCELLANEOUS

A. **FINAL AGREEMENT** This Agreement contains the entire agreement between the parties hereto relating to the Property and supersedes all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties hereto.

B. **VIRGINIA LAW APPLICABLE** This Agreement shall be construed, performed and enforced in accordance with the laws of the Commonwealth of Virginia and shall not be amended or modified and no waiver of any provision hereof shall be effective unless set forth in a written instrument executed with the same formality as this Agreement.

C. **ASSIGNMENT** This Agreement shall not be assigned by one party without the written consent of the other party, except the assignment of this Agreement to an entity owned by Purchaser or the principals of Purchaser shall not require the consent of Seller, but Purchaser shall provide written notice to Seller of such assignment. This Agreement shall inure to the benefit of the parties hereto and their respective and permitted successors and assigns.

D. **COUNTERPARTS** This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. The parties agree that a fax of any signed original document shall have the same effect as an original.

E. **TAX-DEFFERED EXCHANGE** Either party may elect to include the conveyance of the Property in an IRS Section 1031 Like Kind Exchange (a tax-deferred exchange). In the event that a party makes such an election, the non-exchanging party agrees to execute such documents necessary to effectuate such an exchange (at no cost to the exchanging party), but in no event shall such exchange affect the terms of the transaction or a party's responsibilities to the other party under this Agreement. The exchanging party shall bear the sole costs of its exchange

**15. ADDITIONAL PROVISIONS:** <u>Sale & Commissions are subject to US Bankruptcy</u>
<u>Court Approval. Sold strictly in "as-is, where-is" condition. Property is being sold</u>
<u>by a Bankruptcy Trustee.</u>

*LJM*

*PH*

*AH*

**16. ACCEPTANCE** To be effective this Agreement must be executed by Purchaser and Seller and an original copy of this Agreement returned to Purchaser no later than 5:00 p.m. on _____, or this Purchase Agreement shall be deemed withdrawn.

Each of the parties has executed this Agreement in its name pursuant to due authority as of the dates set forth below.

DigiSign Verified - fc872ab7-9d69-464b-8858-8ba80dd112tb
Case 25-11181-BFK  Doc 30  Filed 01/28/26  Entered 01/28/26 15:13:13  Desc Main
Document  Page 17 of 25

DigiSign Verified - 779553bd-4720-45b6-a11c-09af07303b73

of this Agreement and Seller's listing agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's listing agreement.

## 14. MISCELLANEOUS

**A. FINAL AGREEMENT** This Agreement contains the entire agreement between the parties hereto relating to the Property and supersedes all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties hereto.

**B. VIRGINIA LAW APPLICABLE** This Agreement shall be construed, performed and enforced in accordance with the laws of the Commonwealth of Virginia and shall not be amended or modified and no waiver of any provision hereof shall be effective unless set forth in a written instrument executed with the same formality as this Agreement.

**C. ASSIGNMENT** This Agreement shall not be assigned by one party without the written consent of the other party, except the assignment of this Agreement to an entity owned by Purchaser or the principals of Purchaser shall not require the consent of Seller, but Purchaser shall provide written notice to Seller of such assignment. This Agreement shall inure to the benefit of the parties hereto and their respective and permitted successors and assigns.

**D. COUNTERPARTS** This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. The parties agree that a fax of any signed original document shall have the same effect as an original.

**E. TAX-DEFFERED EXCHANGE** Either party may elect to include the conveyance of the Property in an IRS Section 1031 Like Kind Exchange (a tax-deferred exchange). In the event that a party makes such an election, the non-exchanging party agrees to execute such documents necessary to effectuate such an exchange (at no cost to the exchanging party), but in no event shall such exchange affect the terms of the transaction or a party's responsibilities to the other party under this Agreement. The exchanging party shall bear the sole costs of its exchange

## 15. ADDITIONAL PROVISIONS: Sale & Commissions are subject to US Bankruptcy Court Approval. Sold strictly in "as-is, where-is" condition. Property is being sold by a Bankruptcy Trustee.

## 16. ACCEPTANCE To be effective this Agreement must be executed by Purchaser and Seller and an original copy of this Agreement returned to Purchaser no later than 5:00 p.m. on _____, or this Purchase Agreement shall be deemed withdrawn.

Each of the parties has executed this Agreement in its name pursuant to due authority as of the dates set forth below.

**SELLER:**
12/22/2025   /   *Lauren Friend McKelvey, Trustee*

Lauren Friend McKelvey, Chapter 7
Trustee Not individually but solely
in her capacity as the Trustee in
Bankruptcy In Re: RMS Sunset LLC
Bankruptcy Case No: 25-11181-BFK

**PURCHASER**
12/18/2025
Date         Signature

12/18/2025
Date         Signature

**Listing Company's Name and Address**

Century 21 Commerical New Millennium
~~Century 21 New Millennium~~

6631 Old Dominion Dr McLean VA 22101

Agent's Name   Stephen Karbelk/
                Stephanie Young
Agent's tel. no.   571-481-1037/
                   (571) 223-9775

Fax no. _____

Agent's email   Stephen@Realmarkets.com
                stephanie.young@c21nm.com

**Selling Company's Name and address**

Papadopoulos Properties

1420b 21st St NW Washington DC 20036

Agent's Name   Constantine B. *Gogos*

Agent's tel. no.   (202) 365-5537

Fax no. _____

Agent's email   CGogos@papadop.com

©. Copyrighted 2011 by the Central Virginia Regional MLS™, Inc. ("CVR MLS"). This form has been licensed by NVAR from CVR MLS for use by NVAR members and may not be otherwise used or duplicated without the written consent of CVR MLS. Seek legal advice if you do not understand any provision of this form.

## SCHEDULE A

## LEASES, AGREEMENTS AND CONTRACTS
## FOR TENANTS AND OTHER PARTIES
## IN POSSESSION OF THE PROPERTY

List below each such tenant or other party in possession of the Property, and provide Purchaser with a copy of each lease, license or other agreement. If verbal agreement, summarize terms below.

Also provide Purchaser with any contract affecting the Property that is not terminable at will.

"The Purchaser acknowledges and agrees as follows with respect to the tenancy of Amphora Bakery (the "Tenant"):

(a) The written lease dated September 8, 2004 (the "Original Lease"), between GMS Sunset LLC, LLC, as landlord, and the Tenant, as tenant, expired by its terms on or about September 8, 2025. A complete and accurate copy of the Original Lease has been delivered to the Purchaser.

(b) Pursuant to Paragraph 21.03 (Holding Over) of the Original Lease, the Tenant is currently holding over on a month-to-month basis at the holdover rental rate set forth therein (the "Existing Tenancy").

(c) At Closing, Seller shall assign to Purchaser, and Purchaser shall assume, Seller's position as landlord under the Existing Tenancy (including the right to receive rents from and after the Closing Date). Purchaser acknowledges that the Existing Tenancy is a month-to-month tenancy terminable by either party on thirty (30) days' notice (or such other notice period as may be required by applicable law) and that Seller makes no representation or warranty that the Tenant will remain in possession after Closing or agree to any new lease.

(d) There shall be no proration of rent at Closing. All rent and other charges payable by the Tenant for the month in which Closing occurs (and thereafter) shall belong to Purchaser.

(e) No security deposit was required under, or paid pursuant to, the Original Lease, and accordingly no security deposit exists to be transferred to Purchaser at Closing.

(f) During the Feasibility Period and continuing until Closing, Purchaser shall not (directly or indirectly) contact or negotiate with the Tenant or its representatives regarding any extension, renewal, or amendment to the Original Lease, or negotiate a new lease of the premises without Seller's prior written consent, which consent may be withheld in Seller's sole discretion. For clarity, Purchaser's rights during the Feasibility Period remain limited to the inspection and other activities expressly permitted in Paragraph 4(A) of this Agreement."

© Copyrighted 2011 by the Central Virginia Regional MLS™, Inc. ("CVR MLS"). This form has been licensed by NVAR from CVR MLS for use by NVAR members and may not be otherwise used or duplicated without the written consent of CVR MLS. Seek legal advice if you do not understand any provision of this form.

**SCHEDULE B**

**CONTRACTS RELATING TO THE PROPERTY**
**(Not terminable at will)**

© Copyrighted 2011 by the Central Virginia Regional MLS™, Inc. ("CVR MLS"). This form has been licensed by NVAR from CVR MLS for use by NVAR members and may not be otherwise used or duplicated without the written consent of CVR MLS. Seek legal advice if you do not understand any provision of this form.

DigiSign Verified - df4fabed-818b-4f84-9527-ff845f44fff1

## BANKRUPTCY ADDENDUM TO SALES CONTRACT
Dated 12/17/2025 ("Contract")

Lauren Friend McKelvey, Trustee ("Seller") to

**OME Nest LLC and or assigns** _____ ("Buyer") for the property:

294 Sunset Park Drive, Unit 11, Herndon, VA 20170 & 276 Sunset Park Drive, Suite 12, Herndon, VA 20170 ("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.

2. The property, and any contents being conveyed herewith, is being sold "AS-IS, WHERE-IS CONDITION." The sale of the Property is subject higher and better offers and subject to the approval of the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Court"). The Listing Agent will provide to the Selling Agent a copy of the Sale Motion that seeks approval of this Offer with the Court.

3. No Dual Agency and No Designated Representation.

(a) The Owner does not consent to designated representation thus Owner does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.

(b) The Owner does not consent to dual representation thus Owner does not allow the property to be shown to a buyer represented by the Broker through the same sales associate.

4. In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the US Bankruptcy Court.

5. Seller's Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Deed Recording Tax, (d) Regional Congestion Relief Fee, (e) brokerage listing pursuant to the Court approved listing agreement and (f) $150.00 for the Settlement and/or Closing Fee due to the closing company. All other costs of closing, including any additional fees due to the closing company, shall be paid by the Buyer.

6. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 for Settlement and/or Closing Fee costs. If the Buyer is getting a closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

**SELLER:**

_Lauren Friend McKelvey, Trustee_

Lauren Friend McKelvey, Chapter 7 Trustee
Not individually but solely in her capacity
as the Trustee in Bankruptcy
In re: GMS Sunset LLC
Bankruptcy Case No: 25-11181-BFK

Date: 01/23/2026

**BUYER(S):**

Date: 12/18/2025

# CONVENTIONAL FINANCING AND APPRAISAL CONTINGENCY ADDENDUM

This Addendum is made on __12/17/2025__, to a sales contract ("Contract") offered on __12/17/2025__,
between __ONE West LLC and or assigns__ ("Buyer") and
__Lauren McKelvey, Trustee__ ("Seller") for
the purchase and sale of Property: __294 & 276 Sunset Park Drive, Herndon, VA 20170, Herndon, VA 20170__.

1. **SPECIFIED FINANCING.** "Specified Financing" means the terms set forth in Paragraph 2 of Contract and the following loan terms:

   *LJM* **A. First Trust.** Buyer will ☑ **Obtain OR** ☐ **Assume** a ☐ **Fixed OR** an ☐ **Adjustable** rate First Deed of Trust loan amortized over __20__ years. The interest rate for this loan is at an (initial) interest rate not to exceed _____% per year.

   *PH* *AH* **B. Second Trust.** Buyer will ☐ **Obtain OR** ☐ **Assume** a ☐ **Fixed OR** an ☐ **Adjustable** rate Second Deed of Trust loan amortized over _____ years. The interest rate for this loan is at an (initial) interest rate not to exceed _____% per year.

2. **ALTERNATIVE FINANCING.** This financing contingency will not apply to any **Alternative Financing**. "Alternative Financing" means any change to the financing terms in the Specified Financing, including but not limited to Down Payment amount, the amount financed, loan type (i.e., Conventional, FHA, VA, USDA, or Other), term of any loan, interest rate, or loan program (i.e., assumption, fixed or adjustable rate).

   Buyer may substitute Alternative Financing for Specified Financing. Buyer may only exercise their right to Void Contract under this financing contingency by Delivering to Seller a written rejection from the lender(s) to which Buyer has applied for Specified Financing ("Lender Rejection Letter") unless Buyer and Seller execute a new financing contingency addendum for Alternative Financing. Buyer's substitution of lender(s) to which written application has been made under Paragraph 2 of Contract will not: (a) constitute a change in Specified Financing; or (b) constitute Buyer Default provided there is no additional expense to Seller and Settlement Date is not delayed.

3. **FINANCING CONTINGENCY (Select A OR B)**

**☑ A. FINANCING CONTINGENCY WITH AUTOMATIC EXTENSION.**

1. "Financing Deadline" on this contingency is 9:00 p.m. __45__ Days after Date of Ratification.
2. If Buyer has not Delivered to Seller a Lender Rejection Letter for Specified Financing by Financing Deadline, this financing contingency will continue up to, and including, Settlement Date. However, upon expiration of Financing Deadline, Seller may at Seller's option Deliver Notice to Buyer that Buyer has three (3) days to Void Contract. If Buyer does not Void Contract within three (3) days following Delivery of Seller's Notice, this financing contingency is removed and Contract will remain in full force and effect without this financing contingency.
3. Buyer may Void Contract by Delivering to Seller a Lender Rejection Letter for Specified Financing any time prior to the satisfaction or removal of this contingency or expiration of Settlement Date.
4. Buyer may satisfy this contingency by Delivering to Seller a written loan commitment from the lender(s) to which Buyer has applied for Specified Financing ("Loan Commitment") any time prior to the removal of this contingency or expiration of Settlement Date.

NVAR K1359: v07/23

Page 1 of 4

☐ **B. FINANCING CONTINGENCY WITH AUTOMATIC EXPIRATION.**

1. "Financing Deadline" on this contingency is 9:00 p.m. _____ Days after Date of Ratification.
2. Buyer may Void Contract by Delivering to Seller a Lender Rejection Letter for Specified Financing by Financing Deadline, at which time this contingency will expire.
3. Buyer may satisfy this contingency by Delivering to Seller a Loan Commitment any time prior to Financing Deadline.

4. **APPRAISAL CONTINGENCY (Select A OR B)**

☒ **A. APPRAISAL CONTINGENCY.** Buyer may satisfy this Contingency, negotiate Sales Price or Void Contract by 9:00 p.m. ~~15~~ **0** Days following Date of Ratification ("Appraisal Deadline") by Delivering Notice to Seller as follows ("Appraisal Contingency Notice"):

*LFM*

1. Appraisal is equal to or greater than Sales Price and this contingency is satisfied and removed. The parties will proceed to Settlement at Sales Price; **OR**
2. Buyer elects to proceed with consummation of Contract without regard to Appraisal and this contingency is removed. The parties will proceed to Settlement at Sales Price; **OR**
3. Appraisal is equal to or greater than Sales Price, but Buyer elects not to proceed with consummation of Contract because Property either (i) does not satisfy the lender(s) requirements, (ii) Appraisal does not allow for the Specified Financing, and/or (iii) Property is inadequate collateral. Buyer may Void Contract under this subparagraph by Delivering to Seller Appraisal Contingency Notice accompanied by a written denial of the financing showing evidence of the lender(s)'s decision concerning Property. Buyer's Appraisal Contingency Notice will include a copy of the written statement setting forth the appraised value of Property ("Written Statement"); **OR**
4. Appraisal is less than Sales Price and Buyer elects not to proceed with consummation of Contract unless Seller elects to lower Sales Price. Buyer's Appraisal Contingency Notice will include a copy of the Written Statement and Buyer's proposed sales price, which will not be lower than the appraised value.

**Negotiation Period.** In the event of this sub-Paragraph 4(A)(4), the parties will have until 9:00 p.m. **2** days ("Negotiation Period") after Buyer's Delivery of Appraisal Contingency Notice to negotiate a mutually acceptable new Sales Price.

At any time during Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as many offers and counter-offers as desired to reach mutually acceptable terms. Buyer and Seller may agree on terms by signing a written addendum describing the agreed upon new Sales Price within Negotiation Period. Otherwise, all offers and/or counteroffers terminate.

**Buyer's Election Period.** If, at the end of Negotiation Period, the parties are unable to reach an agreement, Buyer will have the option to Void Contract by Delivering Notice to Seller by 9:00 p.m. **2** days following the end of Negotiation Period, otherwise this appraisal contingency will be removed, and Contract will remain in full force and effect at the original Sales Price.

If Buyer has not Delivered Appraisal Contingency Notice by Appraisal Deadline, this appraisal contingency will continue up to, and including, Settlement Date. However, upon expiration of Appraisal Deadline, Seller may at Seller's option Deliver Notice to Buyer that Buyer has three (3) days to Void Contract. If Buyer does not Void Contract within three (3)

days following Delivery of Seller's Notice, this appraisal contingency is removed, and
Contract will remain in full force and effect without this appraisal contingency.

☐ **B. APPRAISAL CONTINGENCY PLUS GAP GUARANTY. (The parties agree that Buyer
will pay the difference, if any, between Appraisal and Sales Price, up to the amount specified
in Paragraph 4(B)(1), except as otherwise provided in this Contingency).** Buyer may satisfy this
Contingency, negotiate Sales Price or Void Contract by 9:00 p.m. _____ Days following Date of
Ratification ("Appraisal Deadline") by Delivering Notice to Seller as follows ("Appraisal
Contingency Notice"):

1. Appraisal plus $_____ ("Buyer Gap Guaranty") is equal to or greater than Sales Price
and this contingency is satisfied and removed. The parties will proceed to Settlement at Sales
Price; **OR**

2. Buyer elects to proceed with consummation of Contract without regard to Appraisal and this
contingency is removed. The parties will proceed to Settlement at Sales Price; **OR**

3. Appraisal plus Buyer Gap Guaranty is equal to or greater than Sales Price, but Buyer elects
not to proceed with consummation of Contract because Property either (i) does not satisfy the
lender(s) requirements, (ii) Appraisal does not allow for the Specified Financing, and/or (iii)
Property is inadequate collateral. Buyer may Void Contract under this subparagraph by
Delivering to Seller Appraisal Contingency Notice accompanied by a written denial of the
financing showing evidence of the lender(s)'s decision concerning Property. Buyer's
Appraisal Contingency Notice will include a copy of the written statement setting forth the
appraised value of Property ("Written Statement"); **OR**

4. Appraisal plus Buyer Gap Guaranty is less than Sales Price and Buyer elects not to proceed
with consummation of Contract unless Seller elects to lower Sales Price. Buyer's Appraisal
Contingency Notice will include a copy of the Written Statement and Buyer's proposed sales
price, which will not be lower than the appraised value plus Buyer Gap Guaranty.

**Negotiation Period.** In the event of this sub-Paragraph 4(B)(4), the parties will have until
9:00 p.m. _____ days ("Negotiation Period") after Buyer's Delivery of Appraisal
Contingency Notice to negotiate a mutually acceptable new Sales Price.

At any time during Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as
many offers and counter-offers as desired to reach mutually acceptable terms. Buyer and
Seller may agree on terms by signing a written addendum describing the agreed upon new
Sales Price within Negotiation Period. Otherwise, all offers and/or counteroffers terminate.

**Buyer's Election Period.** If, at the end of Negotiation Period, the parties are unable to reach
an agreement, Buyer will have the option to Void Contract by Delivering Notice to Seller by
9:00 p.m. _____ days following the end of Negotiation Period, otherwise this appraisal
contingency will be removed, and Contract will remain in full force and effect at the original
Sales Price.

If Buyer has not Delivered Appraisal Contingency Notice by Appraisal Deadline, this
appraisal contingency will continue up to, and including, Settlement Date. However, upon
expiration of Appraisal Deadline, Seller may at Seller's option Deliver Notice to Buyer that
Buyer has three (3) days to Void Contract. If Buyer does not Void Contract within three (3)
days following Delivery of Seller's Notice, this appraisal contingency is removed, and
Contract will remain in full force and effect without this appraisal contingency.

DigiSign Verified - 779553bd-4720-45b6-a11c-09af07303b73
DigiSign Verified - df4fabed-818b-4f84-9527-ff845f44fff1

5. **LENDER REQUIRED REPAIRS.** If, as a condition of providing financing under Contract, the lender(s) requires repairs to be made to Property, then Buyer will give Notice to Seller of the lender(s)'s required repairs. Within five (5) Days after such Notice, Seller will give Notice to Buyer as to whether Seller will make the repairs. If Seller will not make the repairs, Buyer will give Notice to Seller within five (5) Days after Seller's Notice as to whether Buyer will make the repairs. If neither Seller nor Buyer will make the repairs, then Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES; MAJOR SYSTEMS; PERSONAL PROPERTY AND FIXTURES; WOOD-DESTROYING INSECT INSPECTION; or in the Private Well and/or Septic System Addendum or any terms specifically set forth in Contract and any addenda.

**SELLER:**

**BUYER:**

01/23/2026    *Lauren Friend McKelvey, Trustee*        12/19/2025    

Lauren Friend McKelvey, Chapter 7        Date        Signature
Trustee Not individually but solely        12/18/2025
in her capacity as the Trustee in
Bankruptcy for the GMS Sunset LLC        Date        Signature

_____/_____                                _____/_____

Date        Signature                        Date        Signature

_____/_____                                _____/_____

Date        Signature                        Date        Signature

© 2023 Northern Virginia Association of REALTORS®, Inc.

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.